Ryan M. Salzman (SBN 299923)
ryan.salzman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California  90067
Telephone:  +1 310 203 4000
Facsimile:   +1 310 229 1285

JEFFREY S. JACOBSON (*pro hac vice*)
jeffrey.jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141

Attorneys for Defendant
BLIZZARD ENTERTAINMENT, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.H., by and through her Guardian NATHAN HARRIS, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BLIZZARD ENTERTAINMENT, INC., Delaware corporation,<br><br>Defendant. | Case No. 8:22-cv-998-SSS<br><br>**DEFENDANT BLIZZARD ENTERTAINMENT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR MOOTNESS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Judge: Hon. Sunshine S. Sykes<br><br>Action Filed:   May 3, 2022<br>Removal Date: May 17, 2022<br><br>Hearing Date: Sept. 23, 2022<br>Time:             8:30 a.m.<br>Courtroom:    2<br><br>*[Declarations of James Burroughs and Jeffrey S. Jacobson; [Proposed] Order filed concurrently herewith]*<br><br>Trial Date:      None set |

TO THE COURT AND PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 23, 2022 at 8:30 a.m., or as soon thereafter as this matter may be heard by the Honorable Sunshine S. Sykes, in Courtroom 2 of the above-entitled court located at 3470 12th Street, Riverside, CA 90012, Defendant Blizzard Entertainment, Inc. ("Blizzard"), by and through its counsel of record, will and hereby does move this Court for an order to dismiss this action brought by minor plaintiff Y.H., by and through her guardian *ad litem* Nathan Harris ("Plaintiffs"), because the action has become moot.  Although Plaintiffs seek a declaration that Y.H. may disaffirm certain purchases from Blizzard pursuant to Cal. Family Code § 6710, and seek to prosecute claims under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and for "unjust enrichment," on the *assumption* that Blizzard would refuse a disaffirmation request, Blizzard already has accepted Y.H.'s disaffirmation and provided her a full refund.  Plaintiffs thus have neither standing nor any basis to continue this action.  To the extent the Court disagrees and believes Plaintiffs retain standing to pursue claims, the End User License Agreement ("EULA") in effect between Plaintiffs and Blizzard—which Mr. Harris himself accepted on behalf of himself and Y.H., precluding any attempt by Y.H. to disaffirm it—requires those disputes to be resolved in arbitration, not in court.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declarations of James Burroughs and Jeffrey S. Jacobson and exhibits thereto filed concurrently herewith, the [Proposed] Order, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing.

//
//
//
//
//

1         This Motion is filed following a conference of counsel pursuant to Local Rule

2    7-3 which took place on May 24, 2022.

3

4    Dated:  July 1, 2022           FAEGRE DRINKER BIDDLE & REATH LLP

5

6                  By: */s/ Jeffrey S. Jacobson*

7                      Jeffrey S. Jacobson (p*ro hac vice*)
                  Ryan M. Salzman

8                    Attorneys for Defendant
                BLIZZARD ENTERTAINMENT, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ....................................................................... 9

THE COURT SHOULD DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION ........................................................................ 11

    I.       FACTUAL BACKGROUND ............................................... 11

           A.    Purchases Made in the Harris Account. .................... 11

           B.    Nathan Harris Gave Y.H. Access To His Account In 2019. ........................................................................ 12

           C.    Y.H. Did Not Communicate Any Intent to Disaffirm Prior to Filing the Complaint, and Blizzard Promptly Accepted Her Disaffirmation Upon Becoming Aware of the Complaint. .................................................................. 13

           D.    Plaintiffs' Claims. ..................................................... 14

    II.      ARGUMENT ..................................................................... 14

ALTERNATIVELY, THE COURT SHOULD COMPEL ARBITRATION OF THE COMPLAINT ............................................................... 19

    I.       FACTUAL BACKGROUND ............................................... 19

           A.    Mr. Harris Repeatedly Accepted Blizzard's EULA. ............... 19

           B.    Mr. Harris Agreed to Arbitrate Disputes Related to His Account. ................................................................... 21

    II.      ARGUMENT ..................................................................... 24

           A.    The EULA Requires Arbitration. ............................. 25

                1.    Blizzard a Formed An Agreement With Mr. Harris—For Himself and for Y.H.—To Arbitrate Disputes. ........................................................ 26

                2.    Mr. Harris's Acceptance of the Amended EULA is Binding. ........................................................... 29

                3.    This Dispute Falls Within The Scope Of The Agreement to Arbitrate. ..................................... 31

           B.    The EULA Delegates To the Arbitrator Any Questions About Arbitrability, Including Whether Plaintiffs Can Avoid Arbitrating By Asserting Disaffirmation. ..................... 32

           C.    Y.H. Cannot Selectively Disaffirm Provisions of the EULA. ....................................................................... 33

CONCLUSION ........................................................................... 34

4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Adibzadeh v. Best Buy Co.*,
No. 20-cv-6257-JSW, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021)................27

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2010)...............................25, 31

*AT&T Tech., Inc. v. Comm. Workers of America*, 475 U.S. 643 (1986)................31

*B.D. v. Blizzard Ent'mt, Inc.*, 7 Cal.App.5th 931 (2022) .......................11, 25, 29-30

*Bettles v. Toyota Motor Corp.*, No. 2:21-cv-7560-ODW,
2022 WL 1619337 (C.D. Cal. May 23, 2022)....................................................15

*Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144 (9th Cir. 2017) ...........................16

*Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204 (2006)................32, 33

*Burnand v. Irigoyen*, 30 Cal.2d 861 (1947)..............................................................18

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).........................................17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ...........................................................................26

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000)....................................................16

*Daugherty v. Experian Info. Solutions, Inc.*,
847 F. Supp. 2d 1189 (N.D. Cal. 2012)..............................................................26

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) .....................................26

*Deck v. Spartz, Inc.*, No. 2:11-cv-1123-JAM-DAD,
2011 WL 7775067 (E.D. Cal. Sept. 27, 2011) ...................................................18

*Doe v. Epic Games, Inc.*, 435 F. Supp.3d 1024 (N.D. Cal. 2020) .........................18

*Doe v. Roblox Corp.*, No. 3:21-cv-3943-WHO,
2022 WL 1459568 (N.D. Cal. May 9, 2022) .................................................28-29

*Dupler v. Orbitz, LLC*,
No. CV 18-2303-RGK, 2018 WL 6038309 (C.D. Cal. July 5, 2018) ...............31

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
   885 F. Supp. 2d 894 (S.D. Ill. 2012) ........................................................33-34

*Falls v. Soulbound Studios, LLC*, No. 2:21-cv-961-SVW-JPR,
   2021 WL 4295137 (C.D. Cal. July 6, 2021) ...............................................27

*Grube v. Amazon.com, Inc.*, No. 16-CV-126-LM,
   2017 WL 3917602 (D.N.H. Sept. 6, 2017) .................................................28

*Hastings v. Dollarhide*, 24 Cal. 195 (1864) ............................................... 18

*Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591 (E.D.N.C. 2020) ...........28-29

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ................................................................. 32

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp.2d 989 (N.D. Cal. 2012).......................................................17-18

*I.C. v. StockX, LLC*, 19 F.4th 873 (6th Cir. 2021) ......................................33

*K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) ....................................32-33

*Koller v. Harris*, 312 F. Supp. 3d 814 (N.D. Cal. 2018)........................................16

*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020) ........................27, 29

*MacGreal v. Taylor*, 167 U.S. 688 (1897) ............................................... 18

*Macias v. Excel Bldg. Servs., LLC*,
   767 F. Supp. 2d 1002 (N.D. Cal. 2011)........................................................26

*McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex),
   2017 WL 4685039 (C.D. Cal. July 17, 2017) ...............................................30-31

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) ............................................32

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................26

*Nguyen v. Barnes & Noble Inc.*, 763 1171, 1177 (9th Cir. 2014).....................27, 30

*Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL,
   1999 WL 1074120 (C.D. Cal. June 9, 1999)....................................................34

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

*Paz v. California*, No. SACV 16-3 GW (SS),
2019 WL 1581418 (C.D. Cal. Feb. 11, 2019) .................................................... 10

*Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. 2020) ............................. 29

*R.A. v. Epic Games, Inc.*, No. 5:19-cv-325-BO,
2020 WL 865420 (E.D.N.C. Feb. 20, 2020) ...........................................10, 15-19

*R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex,
2019 WL 6792801 (C.D. Cal. July 30, 2019) .................................................... 15

*Ramirez v. Elec. Arts Inc.*, No. 20-cv-5672-BLF,
2021 WL 843184 (N.D. Cal. Mar. 5, 2021) ...................................................... 29

*Reeves v. Niantic, Inc.*, No. 21-cv-5883-VC,
2022 WL 1769119 (N.D. Cal. May 3, 2022) ...................................................... 18

*Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010) ..................................... 32

*Scollan v. Gov't Employees Ins. Co.*, 222 Cal. App.2d 181 (1963) ....................... 18

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ........................................ 29

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ............................. 25

*Sonner v. Premium Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ........................ 15

*St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531 (1978) ............................. 10

*Swift v. Zynga Game Network, Inc.*,
805 F.Supp. 2d 904 (N.D. Cal. 2011) ................................................................ 31

*T.K. v. Adobe Sys., Inc.*, No. 17-CV-4595-LHK,
2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ..............................................17-18

*Weber v. Amazon.com, Inc.*, No. CV 17-8868-GW(Ex),
2018 WL 6016975 (C.D. Cal. June 4, 2018) ...................................................... 30

**STATUTES, RULES & REGULATIONS**

9 U.S.C. § 4 ............................................................................................................. 26

Cal. Bus. & Prof. Code § 17200 ......................................................................14-15

Cal. Fam. Code § 6700 ........................................................................................... 33

Cal. Fam. Code § 6710 ........................................................ 19, 10, 14,16-17

Fed. R. Civ. Proc. 12(b)(1) ................................................................ 16

Fed. R. Civ. Proc. 68.......................................................................... 17

**OTHER AUTHORITIES**

James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors' Privilege to Disaffirm Online Contracts*, 2 UC IRVINE L. REV. 627, 651 n.115 (2012)................................................................ 27

Restatement (Third) of Agency § 3.05, Comment B, illus. 1 (2006)...................... 27

1

## **INTRODUCTION**

This case is moot, but if and to the extent the Court believes any part of the case is not moot, the contract in place between Plaintiff Nathan Harris (on behalf of himself and Y.H.) and defendant Blizzard Entertainment, Inc. ("Blizzard") should cause the Court to compel any remaining dispute into arbitration.

In 2008, before Y.H. was born, her father, Mr. Harris, created an online game account with Blizzard Entertainment, Inc. ("Blizzard") to play a popular Blizzard game, *World of Warcraft*.  In 2014, Mr. Harris added another game, *Hearthstone*, to his account.  *Hearthstone* is free to play, and no player is required to make any in-game purchases or to store a method of payment in his or her Blizzard account.  Mr. Harris, however, stored multiple methods of payment in his account over the years, and he made many purchases related both to *World of Warcraft* and to *Hearthstone*.

On numerous occasions, Mr. Harris expressly accepted contractual agreements with Blizzard.  Those agreements authorized Mr. Harris to share his account with a minor child, but made clear that sharing was at Mr. Harris's discretion and that he—not the minor—would be responsible for all usage of the account, including any purchases made.  The Complaint alleges that in 2019, Mr. Harris began allowing his daughter Y.H. to access his account for the purpose of playing *Hearthstone*.

The Harrises assert that while Y.H. was playing *Hearthstone* in her father's account, to which her father knowingly gave her access, she made purchases in that account using the methods of payment her father voluntarily had stored in the account and used for his own purchases.  They also assert that California Family Code § 6710 permits Y.H. to "disaffirm" these purchases and thereby receive a full refund.  On behalf of a putative class, Plaintiffs also bring various California statutory and common law claims on the assumption that Blizzard would not honor Y.H.'s disaffirmation, which the Complaint communicated to Blizzard for the first time.

Had Blizzard wanted to dispute Y.H.'s attempt to disaffirm the purchases she made in her father's account, it could have done so on multiple grounds:

- Mr. Harris agreed contractually to be responsible for *all* purchases in his account (not just the ones he made himself), regardless of whether he explicitly authorized another user to make purchases.
- Mr. Harris voluntarily stored payment information in the account to make purchases and knowingly gave his daughter access to the account.
- Y.H. and Mr. Harris are residents of Arizona, not California, and therefore cannot invoke the California Family Code.
- Even California-resident minors cannot use Family Code § 6710 to disaffirm ordinary consumer purchases.  If they could, every minor who paid for a movie ticket could demand a refund after having watched the movie, every minor who paid to park a car in a garage could demand a refund after having used the garage's services, etc.
- Several of the transactions were with Google, not Blizzard.  Blizzard was not a party to those transactions, so even if a disaffirmation right existed, Y.H. would have to take that up with Google, not Blizzard.

Despite having these and other substantial defenses to Y.H.'s attempt to litigate disaffirmation rights, Blizzard did not and does not wish to incur the expense and burden of this litigation.  Accordingly, Blizzard promptly accepted Y.H.'s purported disaffirmation and has provided her with a refund for her purchases.  As held under parallel circumstances in *R.A. v. Epic Games, Inc.*, No. 5:19-cv-325-BO, 2020 WL 865420, at *2 (E.D.N.C. Feb. 20, 2020), Blizzard's acceptance of Y.H.'s disaffirmation renders each purchase she made a nullity and "erases the entire basis" for the claims she has asserted.  The *R.A.* court dismissed as moot a set of claims that are substantively identical to Plaintiffs', and this Court should do the same.

Mootness is a threshold jurisdictional issue.  *See St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978); *Paz v. California*, No. SACV 16-3 GW (SS), 2019 WL 1581418, at *2 (C.D. Cal. Feb. 11, 2019).  If, after considering this threshold issue, the Court disagrees with Blizzard and finds that Plaintiffs retain

standing to pursue claims against Blizzard arising from in-game purchases in Mr. Harris's account, Plaintiffs must pursue those claims in binding arbitration (or in small claims court), not in this Court and not as a putative class action. Mr. Harris repeatedly and expressly, on behalf of himself and Y.H., affirmed acceptance of an End User License Agreement ("EULA") that requires disputes to be arbitrated on an individual basis, and Plaintiffs' claims unquestionably fall within the scope of this requirement. The California Court of Appeal recently enforced Blizzard's EULA and its arbitration mandate on March 29, 2022, rejecting claims that the agreement is procedurally or substantively unconscionable. *See B.D. v. Blizzard Ent'mt, Inc.*, 7 Cal.App.5th 931 (2022). Y.H. played *Hearthstone* in Mr. Harris's account with his knowledge, and the EULA made Mr. Harris responsible for all activities in his account. Accordingly, if the Court does not dismiss Plaintiffs' claims as moot, it should compel any remaining claims to arbitration and stay this case in the interim.

## THE COURT SHOULD DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

## I.    FACTUAL BACKGROUND

Blizzard develops and sells video games—including *Hearthstone*, a strategy-based card game—played by many millions of users worldwide. *Hearthstone* is free to play, and players can earn collectible playing cards through game play, but players also may choose to spend real money on "Packs" of cards. Plaintiffs' claims in this case arise from alleged purchases of Packs in Mr. Harris's Blizzard account, which purchases Plaintiffs allege Y.H. charged using credit cards her father stored in the account. This lawsuit demands a refund for those purchases, which Blizzard, as explained below, already has provided to her. *See* Compl. ¶¶ 1-5, 11.

### A.    Purchases Made in the Harris Account.

Blizzard does not require players to store methods of payment in their Battle.net accounts as a condition of playing. *See* Declaration of James Burroughs ("Burroughs Decl.") ¶ 26. In-game purchases are never mandatory, and even players

1    who choose to make in-game purchases may make one-time purchases and need not
2    store a method of payment for future use.  *See id.*

3        Blizzard's records reflect that during Mr. Harris's use of his Battle.net account
4    from 2008 through the present, before and after he gave Y.H. access to the account,
5    he stored multiple methods of payment.  *See* Burroughs Decl. ¶ 27.  In 2018 alone,
6    Mr. Harris stored two Visa cards and a Mastercard.  *See id.*  He added other methods
7    of payment to his account on January 11, 2021 (Mastercard), March 2, 2021
8    (Mastercard), Sept. 9, 2021 (Visa), and November 10, 2021 (Visa).  *See id.*

9        Mr. Harris himself made numerous in-game purchases in his account
10   beginning in 2009, initially pertaining to *World of Warcraft*.  *See* Burroughs Decl.
11   ¶ 28.  His first *Hearthstone*-related purchase occurred in December 2014, and he
12   made 55 *Hearthstone*-related purchases from 2014-2016.  *See id.*  This is prior to the
13   time the Complaint alleges that Mr. Harris began giving Y.H. access to his account.

14   **B.    Nathan Harris Gave Y.H. Access To His Account In 2019.**

15       According to the Complaint, Mr. Harris first gave Y.H. access to his account
16   in 2019 so that she, too, could play *Hearthstone*.  *See* Compl. ¶ 27.  Mr. Harris's
17   decision to share the account with Y.H. was an act permitted by the agreement into
18   which he entered with Blizzard on behalf of himself and any minor child to whom he
19   gave access to the account, but by doing so, he accepted responsibility for Y.H.'s use
20   of the account, including any purchases she made.  *See* Burroughs Decl. ¶¶ 12, 19.

21       Blizzard's records reflect that from 2019 through the present—the time frame
22   that the Complaint alleges Y.H. played *Hearthstone* in Mr. Harris's account—a user
23   of that account made $80.35 in direct purchases from Blizzard related to *Hearthstone*
24   and also paid an unknown amount for *Hearthstone*-related purchases through the
25   Google Play Store. *See* Burroughs Decl. ¶ 29.  Blizzard is not a party to transactions
26   through the Google Play Store and thus has no visibility into the amounts players pay
27   to Google or how they paid.  *See id.*  In March 2019, a player in Mr. Harris's account
28   exchanged previously acquired in-game currency (which could have been purchased

or earned through game play) for *Hearthstone* items.  *See id.*  More *Hearthstone*-related items were purchased in Mr. Harris's account from 2019 through 2021, some directly from Blizzard and some from Google.  *See id.* ¶ 30.  All the direct purchases from Blizzard, totaling $80.35, were made using the methods of payment that Mr. Harris voluntarily stored in the account.  *See id.* ¶¶ 29-30.

### C.   Y.H. Did Not Communicate Any Intent to Disaffirm Prior to Filing the Complaint, and Blizzard Promptly Accepted Her Disaffirmation Upon Becoming Aware of the Complaint.

Plaintiffs' filing of their Complaint represented Blizzard's first notice of any dissatisfaction Mr. Harris or Y.H. felt with respect to any *Hearthstone*-related purchases.  The Complaint itself did not provide enough information for Blizzard to locate the Harrises' account, but Plaintiffs' counsel provided the necessary information to Blizzard voluntarily on May 11, 2022.  *See* Declaration of Jeffrey S. Jacobson ("Jacobson Decl.") ¶¶ 2-3.  Blizzard located the account, determined the account was registered to Mr. Harris, and confirmed that *Hearthstone*-related purchases were indeed made in the account.  *See* Burroughs Decl. ¶¶ 3, 27-30. Blizzard also confirmed it has no record that Mr. Harris or Y.H. communicated with the company about Y.H.'s alleged purchases prior to filing the Complaint.  *See id.* ¶ 32.  On May 16, 2022, Blizzard advised Plaintiffs' counsel that although Blizzard has substantial defenses to Y.H's attempted disaffirmation, it would accept her disaffirmation to avoid the expense and burden of litigation.  *See* Jacobson Decl. ¶ 6.

Because Blizzard does not have visibility into amounts that Plaintiffs paid to Google for purchases made from Google's marketplace, Blizzard asked Plaintiffs to state the total refund they were requesting pursuant to Y.H.'s disaffirmation.  *See* Jacobson Decl. ¶ 6.  On June 21, 2022, Plaintiffs' counsel asserted that Plaintiffs spent a total of $1,179.71 on *Hearthstone* in-game purchases, $340.61 of which reflected purchases made through the Google Store platform, not purchases directly from Blizzard.  *See id.* ¶ 7.  (This differs from the $300 that Plaintiffs' Complaint asserts Y.H. spent with respect to *Hearthstone*.  *See* Compl. ¶ 27.)  Plaintiffs

1 requested a check payable to Y.H. in the amount of $1,179.71, and Blizzard provided

2 that check, sending it by overnight delivery on June 23. *See* Jacobson Decl. ¶ 8.

3       **D.**    **Plaintiffs' Claims.**

4       Despite alleging that neither Y.H. nor Mr. Harris ever read Blizzard's EULA

5 (*see* Compl. ¶ 35), the Complaint asserts that the EULA misled Y.H. and Mr. Harris

6 into believing that Blizzard maintains a strict no-refund policy regardless of laws that

7 may require refunds. *See id.* ¶ 52 (claiming that Blizzard "deni[es]" refund rights "in

8 its Terms of Service"). The current EULA's exact language with respect to refunds

9 for in-game purchases, however, printed in all-capital letters, is that "BLIZZARD IS

10 NOT REQUIRED TO REFUND AMOUNTS YOU PAY . . . FOR DIGITAL

11 PURCHASES MADE THROUGH THE PLATFORM, FOR ANY REASON,

12 **EXCEPT AS REQUIRED BY APPLICABLE LAW**." Burroughs Decl. Ex. D at

13 § 1.A.vii (emphasis added):

14

15     vii. You agree to pay all fees and applicable taxes incurred by you or anyone using your Account. If you choose a recurring subscription for a Game, you acknowledge that payments will be processed automatically (e.g., debited from your Battle.net Balance or charged to your credit card) until you cancel the subscription or the Account. Blizzard may revise the pricing for the goods and services offered through the Platform at any time. YOU ACKNOWLEDGE THAT BLIZZARD IS NOT REQUIRED TO REFUND AMOUNTS YOU PAY TO BLIZZARD FOR USE OF THE PLATFORM, OR FOR DIGITAL PURCHASES MADE THROUGH THE PLATFORM, FOR ANY REASON, EXCEPT AS REQUIRED BY APPLICABLE LAW.

16

17

18 Family Code § 6710 would be such a law in cases (if any) where it validly applies.

19       Y.H. claims that she was "unaware that she had a right to disaffirm any

20 purchases she made" from Blizzard before engaging her present counsel. Compl.

21 ¶¶ 30, 38. She claims that "[h]ad [Blizzard] permitted [her] to disaffirm her

22 purchases, she would have done so." *Id.* ¶ 38. The Complaint thus confirms that

23 Y.H. did not attempt disaffirmation before she and Mr. Harris filed their lawsuit.

24 **II.**    <u>**ARGUMENT**</u>

25       Plaintiffs' claims are moot because Blizzard already has provided Y.H.'s

26 requested refund. Their Complaint (1) seeks a declaratory judgment that Y.H. can

27 disaffirm her transactions with Blizzard and receive a refund for them; (2) asserts a

28 claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

§ 17200, arising from the transactions she wished to disaffirm; and (3) pursues a refund for the Harrises under the alternate theory of "unjust enrichment."[1]   But, because Blizzard accepted Y.H.'s disaffirmation and already has provided the refund, Plaintiffs' first and third causes of action clearly are moot.  Plaintiffs' UCL cause of action is moot, too, because "[b]y voiding the in-game purchases, . . . plaintiff's disaffirmance wipes out the entire basis for h[er] claims," requiring dismissal on mootness grounds.  *R.A.*, 2020 WL 865420, at *2 (applying California law).

In *R.A.*, a minor plaintiff filed suit in this District asserting claims similar to Plaintiffs' here—*i.e.*, that a video game company did not disclose the odds of receiving the most desirable items in so-called "loot boxes."  *R.A.*, 2020 WL 865420, at *1.   The defendant moved to compel arbitration of those claims or, in the alternative, to transfer them to the district where the defendant was headquartered. *See id.*  The *R.A.* plaintiff had not invoked disaffirmation rights in his complaint, but after the litigation began, in an attempt "to avoid arbitration and venue transfer, the plaintiff purported to disaffirm" his acceptance of online agreements requiring arbitration, "citing his minor status."   *Id.*   The defendant promptly accepted this disaffirmation, which necessarily disaffirmed the entire contractual relationship, including the purchases the plaintiff made while subject to the contract.

The *R.A.* defendant immediately suggested the case was moot, but Judge Wu did not himself rule on the effect of the defendant's prompt acceptance of the plaintiff's disaffirmation.  Judge Wu transferred the case to the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1404(a), and left it to the transferee court to determine whether the case had become moot.  *See R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 WL 6792801 (C.D. Cal. July 30, 2019).  Upon the case's arrival in North Carolina, the plaintiff argued that despite his successful

---

[1] Plaintiffs' equitable unjust enrichment claim is subject to dismissal for the separate reason that plaintiffs have an adequate remedy at law.  *See, e.g., Bettles v. Toyota Motor Corp.*, No. 2:21-cv-7560-ODW, 2022 WL 1619337, at *3 (C.D. Cal. May 23, 2022), *citing Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

disaffirmation, he still should be able to litigate UCL claims, or equivalent claims under North Carolina law, arising from disaffirmed transactions.  But the transferee court disagreed: "Plaintiff cannot void the transactions with defendant and receive his refund while simultaneously maintaining causes of action that arise solely from those [voided] transactions."  *R.A.*, 2020 WL 865420, at *2.

The same should be true here.  Plaintiffs' filing of their lawsuit on May 3, 2022, constituted Y.H.'s first notice to Blizzard of her intent to disaffirm.  *See* Compl. ¶¶ 30, 38; Burroughs Decl. ¶ 32.  In other words, Blizzard had no pre-suit opportunity to provide Y.H. with her requested refund.  Once having sued, Plaintiffs' counsel provided Blizzard with sufficient information to locate Mr. Harris's account and confirm the existence of *Hearthstone* in-game purchases from that account.  After conducting that research, Blizzard promptly accepted Y.H.'s disaffirmation.  That is identical to what happened in *R.A.,* when the defendant accepted the disaffirmation after litigation had begun, and the acceptance mooted the *R.A.* plaintiff's UCL claims.

Because Plaintiffs' claims are moot, the Court should dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) ("federal courts can only adjudicate live cases or controversies."); *Koller v. Harris*, 312 F. Supp. 3d 814, 822 (N.D. Cal. 2018) ("courts lack subject matter jurisdiction to adjudicate moot claims.").

Plaintiffs likely will argue that because Blizzard has advised them that its acceptance of Y.H.'s disaffirmation was voluntary and specific to Y.H., and has reserved the right to reject attempts by other players to invoke California Family Code § 6710 (or similar laws of other states) if the facts and circumstances of those later attempts warrant rejection, Blizzard's actions here amount to "picking off" a putative class plaintiff through the kind of unaccepted settlement offer at issue in

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).  The Court should reject any such argument, as the *R.A.* court did when that plaintiff raised it.  In *Campbell-Ewald*, 136 S. Ct. at 667-68, the defendant unilaterally offered an individual settlement and filed a Rule 68 offer of judgment reflecting it, which the plaintiff rejected.  Here, by contrast, it was *plaintiffs* who offered individual resolution of their claims.  That is what invocation of the statutory right to disaffirmation amounts to: an offer by a minor to void her agreements in exchange for a refund for monies paid.  Blizzard simply accepted Plaintiffs' offer.  Precedent involving Family Code § 6710 confirms that a minor retains standing to sue only if the defendant has *refused* a refund request when a minor asserts disaffirmation, which Blizzard did not.

Disaffirmation is an inherently individual act, not well suited to class treatment.  One minor cannot invoke disaffirmation on behalf of another, especially where, by doing so, the minor must give up the ability to continue enjoying the benefits of the contract (here, Blizzard game play).  Although Blizzard does not dispute that one may disaffirm by filing a lawsuit—in other words, the disaffirming minor need not have made an extrajudicial demand for disaffirmation before seeking judicial relief—the disaffirming minor must then take yes for an answer.

In *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp.2d 989, 996 (N.D. Cal. 2012), minors who allegedly used parental credit cards without permission to purchase "credits" from Facebook in their own Facebook accounts (not parental accounts) invoked Family Code § 6710 and sought refunds for those purchases.  Later, in *T.K. v. Adobe Sys., Inc.*, No. 17-CV-4595-LHK, 2018 WL 1812200, at *1 (N.D. Cal. Apr. 17, 2018), a 17-year-old minor who used her own debit card to purchase software access from Adobe in her own account invoked disaffirmation rights to demand a refund for that purchase.  Unlike Blizzard here (and Epic Games in *R.A.*), both Facebook and Adobe explicitly *rejected* those plaintiffs' invocations of disaffirmation rights before each set of plaintiffs sued.  Had Facebook or Adobe provided the requested refunds when the plaintiffs sought to disaffirm, those

plaintiffs' cases likely could not have advanced, as *R.A.* did not.[2]  *See also, e.g., Reeves v. Niantic, Inc.*, No. 21-cv-5883-VC, 2022 WL 1769119, at *1 (N.D. Cal. May 3, 2022) (allowing declaratory judgment action to proceed in alleged disaffirmation case only because "Niantic has not refunded his purchases").

"The law intends [the right to disaffirm] simply as a shield to prevent the infant from injustice"; it is not "a sword to be used to the injury of others." *MacGreal v. Taylor*, 167 U.S. 688, 701 (1897); *see also Hastings v. Dollarhide*, 24 Cal. 195, 216 (1864) (same).  Disaffirmation is an equitable remedy that courts must construe, to the extent possible, in a manner that protects *both* parties to the contract.  In other words, the right to disaffirm contracts is limited and not intended to produce windfalls to minors.  Disaffirmation of a contract renders it a nullity and yields only a refund. *See I.B.*, 905 F. Supp.2d at 1000, *citing Scollan v. Gov't Employees Ins. Co.*, 222 Cal. App.2d 181, 183-84 (1963) (Upon disaffirmation, "the contract becomes a nullity; it and each of its terms and provisions cease to be subsisting or enforceable against the other party . . . .") (internal quotation omitted).  "The effect of disaffirmation by a minor is largely the same as rescission, and as such a legal action for disaffirmation is one in equity, and 'the trial court is vested with a broad discretion to see that equity is done.'" *T.K.*, 2018 WL 1812200, at *4, *quoting Deck v. Spartz, Inc.*, No. 2:11-cv-1123-JAM-DAD, 2011 WL 7775067, at *6 (E.D. Cal. Sept. 27, 2011).

The refund that Y.H. already has received, therefore, is all Y.H. can expect after having successfully disaffirmed her purchases. *See I.B.*, 905 F. Supp.2d at 1001 ("Upon disaffirmance the minor is entitled to recover all benefits paid under the contract."), *quoting Burnand v. Irigoyen*, 30 Cal.2d 861, 866 (1947).  In this case, as

---

[2] *Doe v. Epic Games, Inc.,* 435 F. Supp.3d 1024 (N.D. Cal. 2020), is not to the contrary.  In *Doe*, the plaintiff's counsel sent a Consumers Legal Remedies Act demand letter that did not identify the plaintiff (even by initials). When the defendant did not blindly accept the anonymous plaintiff's disaffirmation, the plaintiff filed a *Doe* suit seeking a declaratory judgment and pursuing UCL and CLRA claims.  The *Doe* court anomalously elected to treat the defendant's non-response to the demand letter as having the same effect as a denial of the anonymous plaintiff's disaffirmation demand.    *See id.* at 1037, 1044.   When the same defendant accepted R.A.'s disaffirmation demand, its acceptance mooted the *R.A.* plaintiff's claims.

in *R.A.*, the minor plaintiff is already whole.  Plaintiffs cannot pursue UCL claims arising from disaffirmed transactions because the successful disaffirmation nullified the transactions.  As held in *R.A.*, the voiding of those transactions eliminated Plaintiffs' statutory standing to assert UCL and unjust enrichment claims arising from them.  *See R.A.*, 2020 WL 865420, at *2.

For the reasons stated above, including those specifically enumerated by the *R.A.* court, this case is moot.  The Court should dismiss the Complaint with prejudice.

## ALTERNATIVELY, THE COURT SHOULD COMPEL ARBITRATION OF THE COMPLAINT

If the Court does not dismiss the case as moot, it should compel Plaintiffs to pursue their claims in arbitration, as required by the EULA that Mr. Harris repeatedly accepted on his own behalf and for Y.H.  There can be no dispute that (1) Mr. Harris accepted the EULA through a process that the Ninth Circuit Court of Appeals has held to be valid; (2) he accepted the EULA on behalf of himself and Y.H.; (3) Blizzard's EULA itself is valid and enforceable, as the California Court of Appeal recently held in *B.D.*; and (4) Plaintiffs' claims fall within the scope of the EULA's dispute resolution provisions.  Because Y.H. played Blizzard games exclusively in her father's account after her father accepted the EULA on her behalf and agreed to be responsible for all actions taken in the account, including purchases made by other users, her status as a minor has no effect on the EULA's requirement that all claims asserted in this case must be arbitrated.

## I.   FACTUAL BACKGROUND

### A.   Mr. Harris Repeatedly Accepted Blizzard's EULA.

Blizzard's records reflect that Mr. Harris created a Blizzard Battle.net account (Battle.net being the application from which players access Blizzard games, including *Hearthstone*) on May 19, 2008.  *See* Burroughs Decl. ¶ 3.  He first used this account to play *World of Warcraft*.  *See id.*  Plaintiffs have advised Blizzard that Y.H. was not born until November 2008.  *See* Jacobson Decl. ¶ 3.  In creating this

account prior to his daughter's birth, Mr. Harris had to accept Blizzard's EULA and its Terms of Service ("TOS") as they existed at the time. *See* Burroughs Decl. ¶ 4.

The EULA that Mr. Harris accepted in 2008 included a reservation of rights by Blizzard to "change, modify, add to, supplement or delete any of the terms and conditions" applicable to game play; an acknowledgement by the player, Mr. Harris, that his "continued use of the Game following notice of changes to th[e] Agreement will demonstrate [his] acceptance of any and all such changes; and an agreement by both sides to resolve any disputes arising from the player's use of Blizzard's software in binding arbitration, rather than in court. *See* Burroughs Decl. ¶¶ 3-5 & Ex. A (EULA) at ¶¶ 14-15. And the TOS he accepted in 2008 required acceptance of the TOS by a legal adult "on behalf of yourself and, at your discretion, for one (1) minor child for whom you are a parent or guardian and whom you have authorized to use the account you create on the Service." *Id.* ¶ 4 & Ex. A (TOS) at ¶ 1.

Blizzard updated its EULA from time to time, as contemplated in the agreement Mr. Harris accepted in 2008. *See* Burroughs Decl. ¶ 6. Mr. Harris's account was continually active from 2008 until well into 2022, and he could not have continued to play without accepting each amended EULA that Blizzard issued. *See id.* As an example, Blizzard issued a new version of its EULA in March 2014. *See id.* ¶ 9 & Ex. B. Later in 2014, Mr. Harris added *Hearthstone* to his existing Battle.net account, and thereafter played both *World of Warcraft* and *Hearthstone*. *See id.* ¶ 10. He thus necessarily accepted the March 2014 agreement *twice* that year—once upon his first login to his account after the March 2014 date when Blizzard issued the new agreement, and again when he added *Hearthstone* to his account *See id.* ¶ 11.

The March 2014 EULA required the person accepting it to be an adult. *See* Burroughs Decl. ¶ 12 & Ex. B ¶ 1.A.i. It advised players "not [to] share the Account or Login Information with anyone other than as expressly set forth in this Agreement," and that "you will be responsible for all uses of the Login Information and the Account, including purchases, whether or not authorized by you." *Id.* Ex. B

§ 1.A.v.-vi. And it stated that "minor children may utilize an Account established by their parent or legal guardian," in which case the adult who accepted the agreement "hereby agree[s] to the Agreement on behalf of yourself and your Child, and you understand and agree that you will be responsible for all uses of the Account by your Child whether or not such uses were authorized by you." *Id.* Ex. B § 1.A.vii.

## B.   Mr. Harris Agreed to Arbitrate Disputes Related to His Account.

Every version of the EULA that Mr. Harris accepted, beginning with the creation of his account in 2008, has required arbitration of disputes. *See* Burroughs Decl. ¶ 4 & Ex. A § 15.  In June 2018, shortly before Mr. Harris first gave Y.H. access to his account, Blizzard updated its EULA again.  *See id.* ¶ 14 & Ex. C.  As with prior updates, Blizzard notified players of the 2018 update by displaying it to them upon their next login to their Battle.net accounts and preventing them from continued game play unless and until they accepted the amended agreement. *See id.* The display that players, including Mr. Harris, saw when they first logged into their Battle.net accounts after June 1, 2018, is depicted on the next page.  It stated: "PLEASE NOTE THAT THE SECTION BELOW TITLED DISPUTE RESOLUTION CONTAINS A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER.  THEY AFFECT YOUR LEGAL RIGHTS.  PLEASE READ THEM." *See id.* ¶¶ 14-16.

//
//
//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24    Blizzard updated its EULA most recently in June 2021.  *See* Burroughs Decl.

25    Decl. ¶ 20 & Ex. D.  *World of Warcraft* and *Hearthstone* play continued in Mr.

26    Harris's account after this date, which could not have occurred absent acceptance of

27    the amended EULA.  *See id.* ¶ 21.  At the top of the current EULA, immediately

28    below a bold-faced notice that the EULA must be accepted by an adult, the EULA

states in all-capital letters that "THIS AGREEMENT CONTAINS A **BINDING INDIVIDUAL ARBITRATION AGREEMENT AND CLASS ACTION WAIVER** IN THE SECTION TITLED 'DISPUTE RESOLUTION,'" and states that this provision "MAY REQUIRE YOU TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION, AND NOT IN COURT." *Id.* ¶ 22.

The EULA defines the range of "Disputes" subject to this mandatory arbitration policy broadly:

> **11. Dispute Resolution. PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT OR TO PURSUE CLAIMS IN A CLASS OR REPRESENTATIVE CAPACITY**
>
> A. **APPLICABILITY OF THIS DISPUTE RESOLUTION POLICY.** This binding individual arbitration section will not apply to the extent prohibited by the laws of your country of residence. In the United States, this Agreement is governed by the Federal Arbitration Act and federal arbitration law. To the fullest extent allowed by applicable law, you and Blizzard agree to submit all Disputes between us to individual, binding arbitration. A "Dispute" means any dispute, claim, or controversy (except those specifically exempted below) between you and Blizzard that relates to any aspect of our relationship, including, without limitation, your use or attempted use of the Platform, the Games, and all marketing related to them, your Battle.net Balance, any licensed content, and all matters arising under this Agreement, Blizzard's Privacy Policy, or any other agreement between you and Blizzard, including the validity and enforceability of this agreement to arbitrate. A Dispute shall be subject to binding, individual arbitration regardless of whether it is based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory. This includes claims that accrued before you entered into this Agreement. You understand that there is no judge or jury in arbitration and that court review of an arbitration award is limited.
>
> B. **INFORMAL NEGOTIATION PERIOD.** In an effort to accelerate resolution and reduce the cost of any Dispute related to, or arising out of, the North American Battle.net End User License Agreement, which is incorporated into this policy, you and Blizzard agree to first attempt to negotiate any Dispute (except as set forth in Section 5 below) informally for at least thirty (30) days before either party initiates any arbitration or court proceeding. **Notice must be provided within two (2) years of the Dispute having arisen, but in no event after the date on which the initiation of legal proceedings would have been barred under the applicable statute of limitations. The failure to provide timely notice shall bar all claims.**
>
>> i. Negotiations will begin upon receipt of written notice by the party raising the Dispute. Blizzard will send its notice to your billing address and e-mail you a copy to the e-mail address you have provided to us.
>
>> ii. You will send your notice to Blizzard at Blizzard Entertainment, Inc., 1 Blizzard Way, Irvine, CA 92618, Attn.: General Counsel.

Disputes that must be arbitrated include: "[A]ny dispute … between you and Blizzard that relates to any aspect of our relationship, including, without limitation, your use or attempted use of the Platform, the Games, and all marketing related to them, your Battle.net Balance, any licensed content, and all matters arising under this Agreement, Blizzard's Privacy Policy, or any other agreement between you and Blizzard, including the validity and enforceability of this agreement to arbitrate.  A Dispute shall be subject to binding, individual arbitration regardless of whether it is

based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory. This includes claims that accrued before you entered into this Agreement." Burroughs Decl. ¶ 23.

The arbitration provision requires JAMS to administer any arbitration pursuant to its Streamlined Arbitration Rules and Procedures, and it delegates to the arbitrator all issues of arbitrability, stating "[t]he arbitrator shall determine the scope and enforceability of this arbitration agreement, including whether a Dispute is subject to arbitration." Burroughs Decl. Ex. D §11.C.iii.  The arbitration provision also clearly requires that arbitrations must be conducted individually, not on a class basis.

> THE ARBITRATION PROCEEDINGS DESCRIBED HEREIN WILL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY. The arbitrator may not consolidate disputes against Blizzard by other individuals or entities unless Blizzard expressly consents to such consolidation. This Agreement provides no right or authority for any Dispute to be arbitrated, adjudicated, or resolved through proceedings on a class or representative basis or using class action procedures. The arbitrator may award any relief that is permitted by applicable law with respect to your individual claim, but to the maximum extent permitted by applicable law, may not award relief against the Company respecting any person other than you.

> vii. THE ARBITRATION PROCEEDINGS DESCRIBED HEREIN WILL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY. The arbitrator may not consolidate disputes against Blizzard by other individuals or entities unless Blizzard expressly consents to such consolidation. This Agreement provides no right or authority for any Dispute to be arbitrated, adjudicated, or resolved through proceedings on a class or representative basis or using class action procedures. The arbitrator may award any relief that is permitted by applicable law with respect to your individual claim, but to the maximum extent permitted by applicable law, may not award relief against the Company respecting any person other than you.

Burroughs Decl. ¶ Ex. D at §11.C.vii.

## II.   ARGUMENT

Any non-moot disputes between Blizzard and Mr. Harris, or between Blizzard and any minor on whose behalf Mr. Harris accepted Blizzard's EULA and whom Mr. Harris authorized to play in his account, must be arbitrated pursuant to the EULA

and not litigated in court.  As the California Court of Appeal held this year in *B.D.*, Blizzard's EULA contains fair terms and Blizzard validly binds players to those terms through a straightforward and enforceable process.  That is the process that Mr. Harris followed numerous times before he gave Y.H. access to his Battle.net account, including in 2008 when he created his account, in 2014 when he began playing *Hearthstone*, and in 2018 when Blizzard rolled out the version of the EULA that the California Court of Appeal upheld in *B.D.* The claims Plaintiffs plead in their Complaint all fall clearly within the EULA's definition of "Disputes" that must be resolved in arbitration.

Even if Plaintiffs assert that it was Y.H., and not Mr. Harris, who clicked "Continue" when Blizzard most recently updated its EULA in June 2021, this would not give Plaintiffs the ability to evade the EULA's arbitration requirement.  It unmistakably was Mr. Harris, and not Y.H., who formed the contract with Blizzard with respect to his account in 2008 (before Y.H.'s birth).  When he formed the contract, it included an arbitration requirement, his acknowledgment of the need to accept future changes to the EULA to continue playing, and his acceptance of responsibility for all purchases made in the account.  The EULAs he accepted before he gave Y.H. access to his account in 2019 all recited that if he elected to share his account with minors in his household, he was accepting the agreements on their behalf, too, and would be responsible for their actions.  Further, even if Y.H. accepted and could rescind acceptance of the July 2021 EULA—which she cannot—the EULA Mr. Harris himself accepted in 2018 would remain in effect, and he agreed to that EULA not only on his own behalf, but for Y.H., too, as the EULA required.

## A.    The EULA Requires Arbitration.

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted).  The FAA requires courts to "rigorously enforce agreements to arbitrate."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  The Supreme

Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or . . . a . . . defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party aggrieved by the refusal of another party to arbitrate under a written agreement may petition the Court for an order compelling arbitration. *See* 9 U.S.C. § 4.

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012), *quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "While the Court may not review the merits … in deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Macias v. Excel Bldg. Servs., LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal quotation and citation omitted).

### 1. Blizzard a Formed An Agreement With Mr. Harris—For Himself and for Y.H.—To Arbitrate Disputes.

As shown above, Nathan Harris could not have created a Blizzard Battle.net account in 2008 without accepting the EULA and its arbitration requirement. Nor could he have continued playing Blizzard games—which he continues to do even now, despite having sued Blizzard (*see* Burroughs Decl. ¶ 21, discussing that Mr. Harris is playing in other accounts, too)—without accepting the amended agreements

that Blizzard promulgated from time to time.  Plaintiffs' Complaint alleges that Y.H. "does not recollect seeing, reading, or agreeing to Defendant's Terms of Use" (Compl. ¶ 35), but that is irrelevant because Y.H. was playing in an account Mr. Harris created, so it is Mr. Harris's acceptance of the terms that matters.

The Complaint (at ¶ 35) also alleges that Mr. Harris "did not see, read, or agree to the terms," but this, too, is irrelevant.  Mr. Harris may have chosen not to read the terms that Blizzard repeatedly put in front of him before he clicked "Continue" to register his acceptance of the terms, but that is not a defense to arbitrating.  *See, e.g., Falls v. Soulbound Studios, LLC*, No. 2:21-cv-961-SVW-JPR, 2021 WL 4295137, at *2 (C.D. Cal. July 6, 2021) (compelling arbitration where plaintiff manifested his intent to be bound by a EULA presented to him by hyperlink, regardless of whether or not he chose to read the terms), *citing Nguyen v. Barnes & Noble Inc.*, 763 1171, 1177 (9th Cir. 2014), and *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020); *Adibzadeh v. Best Buy Co.*, No. 20-cv-6257-JSW, 2021 WL 4440313, at *7 (N.D. Cal. Mar. 2, 2021) (plaintiff's "choice not to read the My Best Buy Terms before clicking 'Sign In' does not invalidate his contract").  Mr. Harris agreed to arbitrate disputes related to his account and must be held to that agreement.

Even if it was Y.H., and not Mr. Harris, who clicked to accept the operative version in June 2021—ignoring the instruction that only an adult may do so—this would not give Y.H. the ability to avoid arbitration.  If Y.H. accepted a EULA in her father's Battle.net account, it was only because Mr. Harris knowingly gave her authorized access to his account.  This had the legal effect of Mr. Harris appointing Y.H. as his agent with respect to usage of the account, and minors cannot disaffirm contracts into which they enter as agents for an adult.  *See* Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006); James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors' Privilege to Disaffirm Online Contracts*, 2 UC IRVINE L. REV. 627, 651 n.115 (2012) ("When parents authorize minors to use credit cards, they confer upon the minors the power to create additional obligations to pay between

the cardholder—the parent—and the issuing bank. . . .  The cardholder has no right to disaffirm due to [lack of] capacity.").  *See also Grube v. Amazon.com, Inc.*, No. 16-CV-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) (minor's use of a credit card gave defendant sufficient reason to believe that the child acted with authority to bind the cardholder).  It was not until Plaintiffs filed suit in the action that Blizzard was made aware of Y.H. using Mr. Harris's account, supporting a theory of ostensible agency.  Plaintiffs therefore cannot use Y.H.'s infancy as the basis for attempting to avoid arbitrating any non-moot claims in this case.

This was the conclusion of the court in *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 596 (E.D.N.C. 2020).  In *Heidbreder*, as here, a parent created an online game account and gave his son access to the account.  He argued that it was his son, and not himself, who accepted an agreement to arbitrate.  The son, a minor, attempted to invoke a right of disaffirmation, but the court held the minor had no such right.  "[U]nder basic principles of principal-agent law, K.H. was acting as plaintiff's agent and had both actual and apparent authority to agree to the EULA and bind" the parent.  *Id.*  The parent was aware of the minor's daily game play.  "Put another way, the evidence demonstrates that plaintiff created an Epic Games account and then gave K.H. free rein over the account for over a year.  Under such circumstances, K.H. reasonably believed he had the implied actual authority to click 'agree' to the EULA.  No genuine issue of fact exists as to K.H.'s actual authority."  *Id.* at 597.  Just as importantly, Epic Games there, just like Blizzard here, "was justified in believing that the user of plaintiff's Epic Games account possessed the authority to agree to the EULA."  *Id.*

This case, like *Heidbreder* before it, is very different from *Doe v. Roblox Corp.*, No. 3:21-cv-3943-WHO, 2022 WL 1459568 (N.D. Cal. May 9, 2022).  In *Roblox*, a ten-year-old plaintiff created an online game account for herself and entered her birth date while doing so.  *See id.* at *1.  After creating the account, the plaintiff used gift cards she received, not a credit card voluntarily stored in the

account by a parent, to make in-game purchases.  *See id.*  Because the plaintiff entered her birth date when creating the account, the defendant knew it was dealing with a ten-year-old, and Judge Orrick held that Roblox's sign-up process did not put "[a] child [of that age]—even a reasonably prudent one—. . . on inquiry notice that she was assenting to an agreement."  *Id.* at *5.  Here, by contrast, as in *Heidbreder*, it was the parent who created the account, repeatedly accepted the associated online agreements, voluntarily stored methods of payment in the account, and knowingly gave his child access to the account.  Although the 2021 EULA controls here because it was the most recent contract Plaintiffs accepted, even were it possible for Y.H. to disaffirm the 2021 EULA (which it is not), Mr. Harris and Y.H. both still would be bound to the terms of the 2018 EULA and its mandatory provision requiring that any and all disputes related to his account must be arbitrated.

### 2.  Mr. Harris's Acceptance of the Amended EULA is Binding.

Mr. Harris has no valid argument that the EULA to which he agreed is not enforceable against him and anyone else whom he allowed to access his account. Blizzard employed a standard and enforceable process for new players and for active players to affirm their acceptance of the EULA in order to begin or continue using the service.  This process required Mr. Harris to affirmatively agree to be bound by the EULA's terms.  *See B.D.*, 292 Cal.Rptr.3d at 60 (concluding that Blizzard's process of binding users to the EULA is enforceable).  The offeree is told the legal consequences of the click (agreement to be bound by a contract) and has the "legitimate opportunity to review" the terms. *See Lee*, 817 F. App'x at 395.  Courts in California consistently enforce agreements formed in this manner.  *See, e.g., Ramirez v. Elec. Arts Inc.*, No. 20-cv-5672-BLF, 2021 WL 843184, at *5 (N.D. Cal. Mar. 5, 2021); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 472 (2021).

In *B.D.*, the minor plaintiff and his father alleged that Blizzard's sale of loot boxes in its *Overwatch* game violated the UCL.  Blizzard moved to compel

arbitration pursuant to its 2018 EULA.  In reversing the trial court's order denying Blizzard's motion, the California Court of Appeal found that "Blizzard's pop-up notice provided sufficiently conspicuous notice of the arbitration agreement such that Plaintiffs are bound by it." *Id.* at 936.  Critically, in so finding, the *B.D.* court stated:

> The Dispute Resolution section of the 2018 License Agreement, in turn, provided sufficiently conspicuous notice that it incorporated by reference the Dispute Resolution Policy, which contains an arbitration provision. 'The general rule is that the terms of an extrinsic document may be incorporated by reference in a contract so long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties.' … These criteria are satisfied here.

*Id.* at 952 (internal citations omitted).  After noting that the hyperlink to Blizzard's Dispute Resolution Policy made its terms "easily available," the court held:

> To conclude, the 2018 pop-up notice provided sufficiently conspicuous notice that by clicking on the 'Continue' button at the bottom of the pop-up, the user would be agreeing to all of the terms of the 2018 License Agreement, which validly incorporated by reference the Dispute Resolution Policy, together with its arbitration agreement and class action waiver (both of which the pop-up notice specifically brought to the user's attention).  [*Id.* at 67.]

The findings of the *B.D.* court apply with equal force to Plaintiffs here. *B.D.* involved enforcement of the 2018 EULA, which Mr. Harris accepted before he gave Y.H. access to his account.  When Blizzard presented its current EULA to users beginning in June 2021, it required their acceptance through the same process.  There can be no doubt of the EULA's enforceability, given this process.  "Reasonable notice in this context requires that the consumer had either actual or constructive notice of the terms of service; constructive notice occurs when the consumer has inquiry notice of the terms of service, like a hyperlinked alert, and takes an affirmative action to demonstrate assent to them." *Weber v. Amazon.com, Inc.*, No. CV 17-8868-GW(Ex), 2018 WL 6016975, at *7-8 (C.D. Cal. June 4, 2018), *citing Nguyen*, 763 F.3d at 1176-79 (9th Cir. 2014).  *See also McKee v. Audible, Inc.*, No.

CV 17-1941-GW(Ex), 2017 WL 4685039, at *12 (C.D. Cal. July 17, 2017) (finding that a contract's being "one of adhesion . . . does not render it procedurally unconscionable"), *citing Concepcion*, 563 U.S. at 346-47. *See also Swift v. Zynga Game Network, Inc.,* 805 F.Supp. 2d 904, 912 (N.D. Cal. 2011) (enforcing agreement where user affirmatively accepted the terms, even where the terms were not presented on the same page as the acceptance button).

These authorities confirm the enforceability of Blizzard's EULA. Blizzard presented it and required assent to it in a standard manner that courts around the country enforce uniformly, including the California Court of Appeal in *B.D.* specifically with respect to Blizzard. The Court should find no differently here.

### 3. This Dispute Falls Within The Scope Of The Agreement to Arbitrate.

Blizzard's EULA defines "Disputes" broadly to include "any dispute, claim, or controversy (except those specifically exempted below) between you and Blizzard that relates to any aspect of our relationship, including, without limitation, your use or attempted use of the Platform, the Games, and all marketing related to them, your Battle.net Balance, any licensed content, and all matters arising under this Agreement, Blizzard's Privacy Policy, or any other agreement between you and Blizzard, including the validity and enforceability of this agreement to arbitrate." Burroughs Decl. ¶ 22. "Any doubts as to whether a particular dispute falls within the scope of the agreement are typically resolved in favor of arbitration." *Dupler v. Orbitz, LLC*, No. CV 18-2303-RGK, 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018), *citing AT&T Tech., Inc. v. Comm. Workers of America*, 475 U.S. 643, 650 (1986). Plaintiffs' claims about *Hearthstone* in-game purchases they allegedly made are claims about Plaintiffs' "use or attempted use of [Blizzard's] platform," are "matters arising under th[e] Agreement," and therefore are "Disputes" that must be arbitrated.

**B.** **The EULA Delegates To the Arbitrator Any Questions About Arbitrability, Including Whether Plaintiffs Can Avoid Arbitrating By Asserting Disaffirmation.**

Blizzard's EULA—Mr. Harris's acceptance of which on behalf of himself and Y.H. cannot be in doubt—requires any disputes over arbitrability to be resolved by the arbitrator: "The arbitrator shall determine the scope and enforceability of this arbitration agreement, including whether a Dispute is subject to arbitration. The arbitrator has authority to decide all issues of arbitrability, including where a party raises as a defense to arbitration that the claims in question are exempted from the arbitration requirement."  Burroughs Decl. Ex. D §11.C.iii.

To the extent Plaintiffs may argue that Y.H.'s alleged role in the in-game transactions at issue should have a legal effect on the arbitrability of Plaintiffs' claims, or argue that one or more of their claims are not arbitrable pursuant to the EULA's terms, it is the arbitrator who must decide whether Plaintiffs are right or wrong. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). *See also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011), *quoting Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) ("delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'")  Even "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1210 (2006).

The delegation of arbitrability questions to the arbitrator includes matters pertaining to a minor's alleged right to disaffirm the arbitration contract. *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 837-38 (7th Cir. 2022).  In *K.F.C.*, an 11-year-old plaintiff signed up for a Snapchat account (lying about her age while doing so, unlike the *Roblox* plaintiff) and affirmatively agreed to Snapchat's terms and conditions, which

contained an arbitration agreement and broad delegation provision.  That minor subsequently sued alleging that some of Snapchat's features violated the Illinois Biometric Privacy Act.  *Id.* at 836-837.  The trial court compelled the dispute to arbitration pursuant to the terms and conditions the minor accepted.  *See id.* at 837.

In affirming the trial court's decision, the Seventh Circuit held that under California or Illinois law (which the parties agreed were materially identical for these purposes, *see* Cal. Fam. Code § 6700), agreements between minors and adults are voidable, not void from the outset, and voidability based on a contracting party's age and capacity must be determined by an arbitrator, not the court.  *See K.F.C.*, 29 F.4th at 837-38.  In so finding, the Seventh Circuit stated, "[t]he holding of *Buckeye* is that a challenge to the validity (as opposed to the existence) of a contract always goes to the arbitrator, no matter how states characterize their views about enforceability.  K.F.C.'s arguments about her youth and public policy concern the contract's validity, not its existence."  *Id.* at 838.  The Seventh Circuit noted that the only other federal Court of Appeals to have ruled on this issue—the Sixth Circuit in *I.C. v. StockX, LLC*, 19 F.4th 873 (6th Cir. 2021), reached the same conclusion.  Neither the Seventh Circuit in *K.F.C.* nor the Sixth Circuit in *I.C.* cited any district court or state court precedent failing to enforce a delegation provision after a minor allegedly agreed to a contract containing one.

This Court should follow the Sixth Circuit's and the Seventh Circuit's lead in holding that to the extent it is even possible for Y.H. to invoke disaffirmation, the dispute over whether she may do so must be resolved by the arbitrator.

## C.    Y.H. Cannot Selectively Disaffirm Provisions of the EULA.

Finally, the Court should compel Plaintiffs' claims to arbitration because even where minors may have the right to disaffirm, they cannot *selectively* disaffirm just certain portions of agreements that they find irksome while retaining other provisions that benefit them.  *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (California disaffirmation law cannot "be used inequitably to retain

1   the benefits of a contract while reneging on the obligations attached to that benefit.");

2   *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120,

3   at *1 (C.D. Cal. June 9, 1999) ("Plaintiff, however, cannot accept the benefits of a

4   contract and then seek to void it in an attempt to escape the consequences of a clause

5   that do not suit her.").  Y.H.'s claims arise from her use of a Battle.net account to

6   which she had access only by virtue of her father's having accepted the Blizzard

7   EULA.  She played *Hearthstone* for at least two years, accepting the benefits of that

8   agreement.  Her UCL cause of action alleges that Blizzard's online contract misled

9   her. *See, e.g.,* Compl. ¶¶ 61, 63, 66.  Y.H. cannot sue over a contract while purporting

10  to disclaim only its dispute resolution terms.

## CONCLUSION

12      For the reasons set forth above, Blizzard respectfully requests that the Court

13  dismiss the action and find Plaintiffs claims moot for lack of standing as a result of

14  Blizzard's acceptance of Y.H.'s disaffirmation request.  In the alternative, Blizzard

15  asks the Court to compel arbitration of the matter, and delegate to the arbitrator any

16  issues of arbitrability, including Y.H.'s disaffirmation defense.

18  Dated:  July 1, 2022                    FAEGRE DRINKER BIDDLE & REATH LLP

20                                          By: */s/ Jeffrey S. Jacobson*
21                                              Jeffrey S. Jacobson (p*ro hac vice*)
                                                Ryan M. Salzman

22                                          Attorneys for Defendant
23                                          BLIZZARD ENTERTAINMENT, INC.