JS-6

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

Y.H.,

    Plaintiff,

v.

BLIZZARD ENTERTAINMENT, INC.

    Defendant.

Case No. 8:22-cv-00998-SSS-ADSx

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE CASE [DKT. 94]**

Before the Court is Defendant Blizzard Entertainment, Inc.'s ("Blizzard") motion for summary judgment (the "Motion"). [Dkt. 94]. This matter is fully briefed and ripe for review. [Dkt. 95; Dkt. 101; Dkt. 102; Dkt. 103]. In accordance with the opinion below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion, [Dkt. 94], and **REMANDS** the case to Orange County Superior Court.

**I.    FACTUAL BACKGROUND**

This matter arises out of Plaintiff Y.H.'s, a minor's, purchases of *Hearthstone* products from Blizzard. [Dkt. 95 at 4]. *Hearthstone* is Blizzard's strategy-based virtual card game in which players can earn cards with in-game currency or purchase cards by spending real-world money. *Id*. at 3. On May

19, 2008, Nathan Harris ("Harris"), Y.H.'s father, created a Battle.net account with Blizzard to play *World of Warcraft*, a popular computer game. *Id*. at 2. Harris' Battle.net account was active from 2008 until 2022. *Id*. In 2014, Harris added *Hearthstone* to his Battle.net account. *Id*. at 3.

When Harris added *Hearthstone* to his Battle.net account, he also gave Y.H. access to his account to play Hearthstone. *Id*. Y.H. played *Hearthstone* from 2014 till 2022. *Id*. In 2018, Harris stored credit cards in his Battle.net account to facilitate in-game purchases. *Id*. at 4. From 2019 until the present, Y.H. used Harris' means of payment to make various purchases of *Hearthstone* products from Blizzard on Harris' account. *Id*. at 4. Y.H.'s purchases totaled at $ 80.35. *Id*. Y.H. never spent her own money on these purchases. [Dkt. 103 at 13].

At the time Y.H. filed her Complaint against Blizzard, Blizzard's "Refund Policy" page stated "*Hearthstone* packs, heroes, adventures, and passes are non-refundable." *Id*. at 6. This policy was amended in the "third quarter of 2023" to state "*Hearthstone* products are generally non-refundable." *Id*. The Court will discuss any other relevant facts below.

## II. PROCEDURAL BACKGROUND

On May 17, 2022, Blizzard removed this action from Orange County Superior Court. [Dkt. 1]. On July 1, 2022, Blizzard filed a motion to dismiss or, in the alternative, to compel arbitration. [Dkt. 19]. On November 29, 2022, the Court denied Blizzard's motion to dismiss and motion to compel arbitration. [Dkt. 47]. On March 21, 2023, Blizzard filed a motion to stay the case pending appeal. [Dkt. 66]. The Court granted the motion to stay on June 26, 2023. [Dkt. 74]. Upon appeal to the Ninth Circuit, the panel vacated this Court's denial of Blizzard's motion to compel arbitration and remanded the case to this Court to determine if Y.H. has Article III standing. [Dkt. 76].

After the case was remanded, the Court, after holding a hearing on this issue, granted the Parties' stipulation to file a motion for summary judgment regarding Y.H.'s standing. [Dk. 91]. It is to this Motion that the Court now turns.

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact, so that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual issue is 'genuine' when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is 'material' when its resolution might affect the outcome of the suit under the governing law." *Headlands Reserve, LLC v. Ctr. for Nat. Lands Mgmt.*, 523 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 2007).

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). The court does not make

credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## IV.     DISCUSSION

In broad strokes, Blizzard argues Y.H. lacks standing to bring her claims because (1) Y.H.'s claims are unripe, and (2) Y.H. fails to establish an injury sufficient to meet the injury-in-fact requirement of Article III of the United States Constitution. [Dkt 94]. For the reasons set forth below, the Court disagrees with the former, but agrees with the latter.

### A.     Ripeness

"Along with standing and mootness, ripeness is one of three justiciability requirements." *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1122 (9th Cir. 2022). It is designed to "'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies[.]'" *W. States Trucking Ass'n v. Becerra*, No. 5:19-cv-02447-CAS (KKx), 2020 WL 2542062, at *4 (C.D. Cal. May 18, 2020) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148–149 (1967)). In conducting a "traditional ripeness inquiry, [courts] evaluate both 'a constitutional and a prudential component.'" *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (citation omitted). Relevant here is the constitutional component of the ripeness inquiry which is "synonymous with the injury-in-fact prong of the standing inquiry." *Twitter*, 26 F.4th at 1123 (citation omitted).

However, "[w]hether framed as an issue of standing or ripeness, an injury must involve 'an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, Blizzard argues Y.H. lacks standing because her claims are unripe. [Dkt. 94 at 15]. In support of this argument, Blizzard relies almost exclusively

on the Ninth Circuit's recent decision in *V.R. v. Roblox Corp.*, No. 23-15216, 2023 WL 8821300 (9th Cir. Dec. 21, 2023). In response, Y.H. argues *V.R.* supports a finding of standing in this case. [Dkt. 101 at 8–9]. For the reasons stated below, the Court agrees and **DENIES** Defendant's Motion as to the ripeness of Y.H.'s claims.

In *V.R.*, the plaintiff alleged the defendant "unlawfully denie[d] minors refunds for their purchases" of in-game currency. *V.R.*, 2023 WL 8821300, at *1. The district court dismissed the plaintiff's claims as unripe, and the Ninth Circuit affirmed. *Id*. at *2. In affirming, the Ninth Circuit held, relying in part on the defendant's policy stating purchases of such currency are non-refundable "except as required by law," that the plaintiff failed to "plausibly allege that [the defendant] ha[d] a policy in writing or in practice of not granting refunds to disaffirming minors." *Id*. at *1. The Ninth Circuit went on to find, in light of the absence of such a policy, the plaintiff's failure to ask for a refund before filing their claims rendered the claims unripe. *Id*.

Here, Blizzard argues Y.H.'s claims are unripe because, like in *V.R.*, Blizzard's 2021 End User License Agreement ("EULA") stated Blizzard would give no refunds "except as required by applicable law." [Dkt. 94 at 15–16]. However, this only tells half the story. While the 2021 EULA did contain the phrase "except as required by applicable law," it is also undisputed that at the time of the filing the Complaint, Blizzard's "Refund Policy page" stated "*Hearthstone* packs, heroes, adventures, and passes are non-refundable." [Dkt. 103 at 15]. Thus, unlike the plaintiff in *V.R.*, Y.H. produced evidence sufficient to establish Blizzard had a policy in writing of not granting refunds to disaffirming minors. *V.R.*, 2023 WL 8821300, at *1. As such, the Court finds Blizzard's argument fails, and, unlike the plaintiff's in *V.R.*, Y.H.'s claims are ripe for adjudication.

### B. Concrete and Particularized Injury

Blizzard also argues Y.H. lacks Article III standing because Y.H. used her father's account and credit cards to make the purchases. [Dkt. 94 at 17].[1] In response, Y.H. argues she was injured because (1) she was subject to defendant's deceptive video game design, (2) she purchased the virtual items in question, and (3) Blizzard's alleged policy of refusing minors' disaffirmance impacts her rights.[2] [Dkt. 101 at 12–13].

To satisfy the injury-in-fact requirement of standing, Y.H. must establish she suffered a concrete and particularized injury as to each claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); *See In re Adobe Sys, Inc. Privacy Litig*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014). An injury is "particularized" when it affects "the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. As for what constitutes concrete injury, tangible injuries such as injuries to property or monetary losses are considered concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). However, intangible harms with close relationships to harms that have been traditionally recognized in American courts as providing a basis for a lawsuit, such as reputational or privacy harms, are also sufficient to meet the concrete injury requirement of standing. *Cantu v. Tractor Supply Comp.*, No. 2:23-cv-3027-HDV-JC, 2024 WL 1601257, at *2 (C.D. Cal. Mar. 21, 2024) (citing *TransUnion*, 594 U.S. at 425). Because Blizzard challenges the standing of Y.H. as to each claim, the Court addresses all claims below.

---

[1] While Blizzard also attacks Y.H.'s statutory standing under the UCL, the Court finds such attacks improper given the spirit of the Court allowing this Motion was to determine whether Y.H. has Article III standing and nothing more. [*See e.g.*, Dkt. 77 (setting briefing schedule regarding Article III standing); Dkt. 76 (the Ninth Circuit remanding the case to have the Court determine whether Y.H. has Article III standing)]. As such, the Court declines to reach the issue of UCL standing.

[2] This is a non-exhaustive summary of Y.H.'s injury arguments, and the Court will discuss any other relevant arguments in subsequent portions of the order.

-6-

### 1. Declaratory Judgment Claim

To award relief under the Declaratory Judgment Act, the Court must first find there is "a case of actual controversy." *Obesity Rsch. Institute, LLC v. Fiber Rsch. Int'l, LLC*, No. 15-cv-595-BAS(MDD), 2017 WL 1174739, at *3 (S.D. Cal. Mar. 29, 2017). While the requirements of Article III standing are not lessened in the declaratory judgment context, courts have held the above requirement is identical to Article III's constitutional case or controversy requirement. *Id.* at *3 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1022–23 (9th Cir. 2023) (quoting *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005)). Thus, a plaintiff can establish standing to seek a declaratory judgment if they show "there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Obesity*, 2017 WL 1174739, at *3 (quoting *Maryland. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, the Court finds Y.H. has met the above test because Y.H. has established an actual controversy over the rights of minors to disaffirm their purchases of *Hearthstone* products. The undisputed facts show Blizzard had at least one public "no refund" policy in place when Plaintiff filed their Complaint. [Dkt. 1003 at 15]. The existence of such a policy, coupled with Y.H.'s filing of suit to disaffirm the agreement, is sufficient to create a "a case or actual controversy" within the meaning of the Declaratory Judgment. Thus, the injury-in-fact requirement of Article III is met. *I.B. by and through Fife v Facebook, Inc.*, No. 12-cv-1894 CW, 2013 WL 6734239, at *2 (N.D. Cal. Dec. 20, 2013).[3]

---

[3] The Court notes Blizzard does not argue the claim is moot by virtue of the change in their policy. [Dkt. 103 at 13 (discussing the amendment to its publicly posted policy)].

2. **UCL Claim**

As to the UCL claim, Y.H. fails to establish standing. As noted above, Y.H. must allege an injury-in-fact that is both particularized and concrete. *Spokeo*, 578 U.S. at 339. Here, for the reasons set forth below, the Court finds Y.H. fails to do so.

Regarding particularity, one of the bases for Plaintiff's UCL claim is the alleged violation of minors' rights to disaffirmance under California law. [Dkt. 1-1 at 15]. Because Y.H. is a minor whose right to disaffirmance was allegedly violated by Blizzard's policy, the injury Y.H. claims affect her in a personal and individual way. As such, Y.H. adequately establishes a particularized injury.

Turning to the second issue, the Court finds the undisputed facts show Y.H. lacks a concrete injury. "[A]n alleged statutory violation [, by itself,] does not amount to an" injury in fact. *Smith v. Radius Glob. Sols, LLC*, No. 5:22-cv-02259-RGK-SP, 2023 WL 6373874, at *2 (C.D. Cal. Sept. 25, 2023) (citing *Spokeo*, 578 U.S. at 342). Rather, a plaintiff must establish the statutory violation resulted in a concrete injury. *Id.* (citing *TransUnion*, 141 S.Ct. 2190, 2204 (2023). As stated prior, concrete harm is not limited to tangible harms such as "physical harms and monetary harms" because "[v]arious intangible harms can also be concrete." *TransUnion*, 594 U.S. at 424–25. However, when the alleged harm is intangible in nature, courts determine whether the harm is concrete by "considering (1) congressional judgment and (2) historical practices." *Smith*, 2023 WL 6373874, at *2 (citing *Spokeo*, 578 U.S. at 340–41).

Here, Y.H. fails to allege a concrete injury sufficient to support Article III standing. Because the undisputed facts demonstrate Y.H. spent her *father's* money on her *father's* account, rather than her own money on her own account, Y.H. fails to establish she suffered monetary harm, and thus a tangible harm,

sufficient to meet the requirements of Article III standing.[4] [Dkt. 103 at 13]; *See e.g.*, *Chang Wei Lee v. XO Commc'n, LLC*, No. 11-cv-8677-JFW(VBKx), 2012 WL 164080, at *3 (C.D. Cal. Jan. 13, 2012) (finding plaintiff lacked Article III standing where he did not pay for the "allegedly improper" charges); *Henriquez v. ALDI, Inc.*, No. 2:22-cv-06060-JLS-JEM, 2023 WL 2559200, at *5 (C.D. Cal. Feb. 7, 2023) (finding plaintiff had Article III standing where *she paid* a premium for tuna that was not dolphin safe); *Evox Prods, LLC v. Lemberg Law, LLC*, No. 21-cv-7875 PA (AGRx), 2022 WL 19237186, at *5 (C.D. Cal. Feb. 15, 2022) (finding Article III standing where plaintiff alleged defendant's use of its *copyright* deprived it of licensing opportunities); *Petroleum Power Int'l Corp. v. Hidden Passage, LLC*, No. 5:21-cv-00028-JWH-SP, 2024 WL 1825436, at *4–5 (C.D. Cal. Mar. 27, 2024) (finding no standing where plaintiff tried to assert the rights of another entity). Put simply, any monetary harm that was felt, was felt by the rightful owner of the money and the account at issue, Harris, not Y.H..

Regarding Y.H.'s other arguments, that a concrete injury exists because (1) Y.H. was subject to the deceptive video game design, and (2) it was Y.H.'s right to disaffirmance that was allegedly violated, the Court finds these are statutory violations of the UCL such that, absent a showing of an accompanying concrete harm, Article III standing is not met.[5] *TransUnion*, 594 U.S. at 425; [Dkt 101 at 12–13]; Cal. Bus. & Prof. Code § 17200(a) (creating causes of action for business practices are unlawful, unfair, or fraudulent). Thus, because as shown above Y.H. fails to allege a concrete harm in relation to the statutory

---

[4] While a colorable argument could possibly be made that Y.H. had a property interest in the money for some reason, Plaintiff fails to make such an argument or point the court to any compelling authority showing the possession and use of another's funds creates the requisite injury in fact.
[5] Y.H. fails to provide the Court any historical analogue that would show such intangible harms constitute an actionable concrete injury. [Dkt. 101].

violations of the UCL, Y.H. fails to show an injury-in-fact sufficient to meet the requirements of Article III. *TransUnion*, 594 U.S. at 425. As such, Y.H. lacks standing to bring her UCL claim, and the claim must be dismissed.

For the sake of completeness, the Court addresses Y.H.'s reliance on *I.B. v. Facebook, Inc.*, 2013 WL 6734239, at *6, and *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599 (9th Cir. 2020). [Dkt. 101 at 11]. For the reason set forth below, Y.H.'s reliance on the above cases is misplaced.

First, despite Y.H.'s assertion that *I.B.* is a Ninth Circuit decision and thus binding on this Court, *I.B.* is a district court case from the Northern District of California. [*See* Dkt. 101 at 11 (stating "as evidence by the pointed inquiry from the Ninth Circuit…")]; *I.B. v. Facebook, Inc.*, 2013 WL 6734239, at *6. Thus, *I.B.* is persuasive, not binding, authority. *I.B.*, 2013 WL 6734239, at *1. Second, as to *In re Facebook*, the Court notes in that case the plaintiffs' were able to establish standing because it was *their own data* that was being misappropriated by Facebook, not the data of other people. *See In Re Facebook, Inc.*, 956 F.3d at 599–601 (finding plaintiffs established Article III standing where plaintiffs alleged "their browsing histories carry financial value"). Thus, Y.H.'s reliance on *In re Facebook* is misplaced because what is of value here, the money used to purchase the *Hearthstone* cards stemmed from her father's payment sources, not her own. [Dkt. 103 at 12].

The Court also finds Y.H.'s argument regarding the value of the cards themselves to be unpersuasive. [Dkt. 101 at 14]. Y.H. argues she sustained a cognizable injury because the cards she purchased were worth less than represented. *Id*. However, this argument suffers from the same deficiency as discussed above. Plaintiff purchased the cards with her father's credit cards on her father's account.[6] Moreover, it is undisputed Plaintiff did not spend her own

---

[6] Y.H. also seems to argue that she suffered a cognizable injury because she spent the money

money on the cards.  Thus, any claimed economic damage resulting from the cards was her father's, not her own.[7]  As such, the above argument fails.

### 3. Restitution or Unjust Enrichment Claim

Unlike Y.H.'s UCL claim, the Court finds Y.H. fails to show the injury in this case is particularized.  An injury is particularized when it affects "the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  Here, the undisputed facts establish (1) Y.H. never spent her own money on any *Hearthstone* products, (2) Y.H. made her purchases using her father's payment methods, and (3) that Y.H.'s father was responsible for the purchases.  [Dkt. 103 at 8–9; *Id*. at 13; Dkt. 95 at 4–5].  As such, because the funds used to purchase the *Hearthstone* products were not Y.H.'s, the Court finds the harm here was incurred by her father, not Y.H. herself.  As such, Y.H. fails to show a particularized injury.  *Petroleum Power*, 2024 WL 1825436, at *4–5; *Chang Wei*, 2012 WL 164080, at *3.

The Court also notes even if Y.H. did adequately establish a particularized injury, the claim would still be dismissed because "the weight of authority" in this district concludes unjust enrichment under California law is a remedy, rather than an independent cause of action.  *See Simple Design Ltd. v.*

---

at issue without Harris' permission.  [Dkt. 101 at 12–13].  However, Plaintiff fails to provide any legal support for the proposition that sole use of a shared account, or the use of money that is not theirs, creates an interest in purchased items such that the purchaser has standing.  In prior filings, Plaintiff has sought to establish a cognizable injury by likening her situation to the situation of banks in the civil forfeiture context.  [Dkt. 81 at 6 (citing *United States v. Union Bank for Sav. & Inv. (Jordan)*, 487 F.3d 8 (1st Cir. 2007)].  The Court finds this comparison uncompelling because, unlike the bank in *Union Bank*, (1) the funds at issue here were not taken from Y.H.'s account and (2) Y.H. did not exercise "full dominion and control" over the account as it was her father's account and father's funds.  *Union Bank*, 487 F.3d at 22; [Dkt. 103 at 13].

[7] Moreover, even if the Court were to consider this harm to be suffered by her, the Court notes Plaintiff fails to cite any evidence showing that the cards were not valued properly. [Dkt. 101 at 14].

-11-

*Dairy-Queen Vision*, No. 2:22-cv-03585-JLS-AFM, 2023 WL 2629153, at *5 (C.D. Cal. Jan. 10, 2023).

## V. DISMISSAL OF DECLARATORY JUDGMENT CLAIM

As set forth above, Y.H. lacks Article III standing to bring her UCL and unjust enrichment claim. Thus, all that remains is the Declaratory Judgment claim. Because the Declaratory Judgment Act creates a remedy, not an independent cause of action, the Court hereby **DISMISSES** the Declaratory Judgment claim without prejudice. *See Fluor Corp. v. Resolute Mgmt.*, No. 8:21-cv-01907-JLS-KES, 2022 WL 2101891, at *4 (C.D. Cal. May 4, 2022) (dismissing claim for declaratory relief where all other substantive causes of action failed); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (stating a court may *sua sponte* dismiss a claim without giving notice to the parties if the claimant "cannot possibly win relief"); *Householder v. Specialized Loan Servicing LLC*, No. 21-cv-1008-DMG (SKX), 2021 WL 6104179, at *5 (C.D. Cal. June 3, 2021).

## VI. CONCLUSION

In sum, the Court **GRANTS** Defendant's Motion and, because of Y.H.'s lack of Article III standing,[8] the Court finds it lacks subject matter jurisdiction over the action. When a federal court lacks subject matter jurisdiction over an action, the proper course of conduct is to remand the action to state court. *Polo*

---

[8] In closing, the Court notes this opinion does not mean children everywhere are barred from bringing claims like Y.H.'s. Child plaintiffs in other similar suits have alleged facts sufficient to show concrete and particularized injuries sufficient to establish Article III standing. *See e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1034 (N.D. Cal. 2020) (alleging similar claims where minor "used his own money" to make purchases); *T.K. v. Adobe Sys., Inc.*, No. 17-cv-04595-LHK, 2018 WL 1812200, at *1 (N.D. Cal. Apr. 17, 2018) (alleging similar claims where minor used his own visa card for payment); *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 993–94 (N.D. Ill. 2017) (finding standing based on loss of virtual lives where *plaintiff* received the lives by soliciting friends to download the game).

*v. Innoventions Int'l, LLC.*, 833 F.3d 1193, 1196–97 (9th Cir. 2016). This is so because the lack of federal subject matter jurisdiction does not mean state courts, who "are not bound by the constraints of Article III[,]' lack the power to hear the case." *Id*. (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617 (1989)). Thus, in light of the above, the Court hereby **REMANDS** this action to Orange County Superior Court.[9]

**IT IS SO ORDERED.**

DATED: August 14, 2024

_____
SUNSHINE S. SYKES
United States District Judge

---

[9] Blizzard argues the Court should dismiss, rather than remand, Y.H.'s claims because remand would be futile. [Dkt. 102 at 8]. The Court declines to dismiss the claims for two reasons. First, the Court notes 28 U.S.C. § 1447(c) does not allow for the dismissal of claims where federal courts lack subject matter jurisdiction. As such, the Court finds dismissal is improper. *See e.g., Polo*, 833 F.3d at 1197–98 (declining to reach the issue of the "futility doctrine," but noting the Supreme Court has declined to apply the rule); *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (stating "the literal words of §1447(c) … give no discretion to dismiss rather than remand an action"). Second, even if the Court were to consider the futility exception as viable, the Court cannot determine with "absolute certainty" that the Complaint would fail in state court, and thus remand is proper. *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991).